STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         CIVIL ACTION
                                                        DOCKET NO. CV-23-52

PATRICK MCDONALD and
SONYA MCDONALD ,

      Plaintiffs,

      v.                                      **ORDER GRANTING**
                                                        **MOTION TO DISMISS**

ISABELLE DIMILLO,
RIVALRIES, LLC, and
COMMERCIAL STREET PUB, INC.

      Defendants


Before the court is a motion to dismiss brought by Defendant Rivalries, LLC

("Rivalries") pursuant to the Maine Liquor Liability Act, 28-A M.R.S. § 2513.

**Background**

Plaintiffs Patrick and Sonya McDonald have filed a four-count complaint based on

injuries Patrick sustained when injured in a collision on his motorcycle. The complaint alleges

that DiMillo was operating under the influence of alcohol when she caused her vehicle to strike

Patrick McDonald's motorcycle on October 30, 2021. Count II, brought against Rivalries, is for

violation of the Maine Liquor Liability Act ("Act"), Maine Revised Statutes Title 28-A, Chapter

100. Specifically, it alleges that prior to the collision, Rivalries recklessly and/or negligently

served DiMillo alcohol after her shift working there and when she was visibly intoxicated,

thereby proximately causing serious injury to Patrick McDonald.

Plaintiffs sent Rivalries notice of their claim on October 5, 2022. Rivalries has moved to

dismiss count II. It argues that Plaintiffs failed to give Rivalries notice within the allotted 180-

day window under 28-A M.R.S. § 2513 and have failed to show good cause for that failure.

1

Entered on the Docket: 5/5/2023

REC'D CUMB CLERKS OFC
MAY 5 '23 AM10:59

**Legal Standard**

> Every plaintiff seeking damages under this Act must give written notice to all defendants within 180 days of the date of the server's conduct creating liability under this Act. The notice must specify the time, place and circumstances of the server's conduct creating liability under this Act and the time, place and circumstances of any resulting damages. No error or omission in the notice voids the effect of the notice, if otherwise valid, unless the error or omission is substantially material. Failure to give written notice within the time specified is grounds for dismissal of a claim, unless the plaintiff provides written notice within the limits of section 2514 and shows good cause why notice could not have reasonably been filed within the 180-day limit. For purposes of this section, "good cause" includes but is not limited to the inability of the plaintiff to obtain investigative records from a law enforcement officer or law enforcement agency.

28-A M.R.S. § 2513. Section 2514 requires that actions under the Act are brought within two years after the cause of action accrues.

**Discussion**

There is no dispute that Plaintiffs gave Rivalries notice of the claim outside of the 180-day window of § 2513 but inside of the two-year window of § 2514. Therefore, the court only addresses whether Plaintiffs have shown good cause why notice could not have reasonably been filed within the 180-day limit. Plaintiffs provide an affidavit from Plaintiff's counsel, detailing his efforts and providing as exhibits the documents he obtained throughout his investigation. After reviewing the briefs, affidavit, and exhibits, the court determines that Plaintiffs have not shown good cause and grants Rivalries motion to dismiss count II.

Rivalries cites *Beaulieu v. Aube Corp.* for the proposition that good cause under the Act "requires a showing that the plaintiff was unable to file a claim or was meaningfully prevented from learning the information forming the basis for his or her complaint." 2002 ME 79, ¶ 13, 796 A.2d 683 (citing *Peters v. City of Westbrook*, 2001 ME 179, ¶ 6, 787 A.2d 141). Plaintiffs

2

distinguish the case as a more extreme set of facts; however, regardless of the differences in fact, the definition of good cause in *Beaulieu* is controlling.[1]

According to his affidavit, Plaintiffs' Attorney obtained a copy of DiMillo's driving record after agreeing to represent the McDonalds in late January 2022. Aff. ¶¶ 2-3. Plaintiffs argue no information on this document could have alerted them that DiMillo had been operating under the influence. However, DiMillo's driving record, clearly states, "ADMINISTRATIVE ACTION – OPER WITH BAC .08 OR MORE," and on the next line, it reads "VIOLATION-DATE: 10/30/21." (Pls.' Ex. A.) This document should have put Plaintiffs on notice that DiMillo had been intoxicated at the time of the collision.

The affidavit shows no additional investigative steps by Plaintiff's Attorney between January and June 2022, during which time the 180-day period lapsed in April, 2022. Plaintiff's Attorney's affidavit states that he first learned that DiMillo had been arrested for operating under the influence upon reading the State of Maine crash report (Pls.' Ex. B.), which he received on June 6, 2022, four to five months after the receipt of the driving report and over one month after the deadline to notify Rivalries had passed. Aff. ¶¶ 4-5. Plaintiffs offer no reason why it took so long to obtain the crash report. After receipt of the crash report, the affidavit shows no action until June 20, 2022, when Plaintiff's Attorney requested a copy of the police report from the Portland Police Department. ¶ 5. In a June 22 reply letter, Portland Police Department advised him to make his request to Portland's Corporation Counsel. ¶ 6. He sent a letter requesting the police file for the collision to Corporation Counsel over a month later on July 27, 2022. ¶ 7.

Plaintiff Attorney's affidavit shows that he did not learn of Rivalries's involvement in the incident until an unspecified date in September 2022, when DiMillo's counsel in the related

---

[1] The Legislature amended § 2513 in 2017 to add the final sentence, which clarifies the definition but does not supersede *Beaulieu.*

3

criminal case informed him that DiMillo had been drinking alcohol at Rivalries before the collision. ¶ 10. He had first reached out to criminal counsel in June 2022 and requested to meet with DiMillo herself to ask about her drinking on October 30, 2021. ¶ 8. Criminal counsel offered dates to meet, but Plaintiff's Attorney could not meet on those dates. (Pls.' Ex. F.) Plaintiff's Attorney asked criminal counsel to meet a few more times. *Id.* Neither the exhibits nor affidavit shows that he ever asked DiMillo's criminal counsel anything about the night of the crash, only that he requested to speak with DiMillo herself. Plaintiff's Attorney states that he sent notice of the claim to Rivalries "within 30 days of" discovering Rivalries's involvement. Aff. ¶ 13.

The court cannot find good cause on these facts.[2] No evidence suggests Plaintiffs took any steps to further their investigation between the time in January 2022 when they should have known of DiMillo's intoxication and when they actually learned of her intoxication in June 2022, after the time notice period had lapsed. Any difficulty Plaintiff's Attorney had in scheduling a meeting with criminal counsel or in obtaining a police report does not excuse the failure to investigate during the notice period. Plaintiffs have not shown they were meaningfully prevented from learning about Rivalries's involvement or unable to file a claim. While the result may be harsh if there was a good case against Rivalries, the statute compels dismissal. The court grants Rivalries motion to dismiss count II.

<u>The entry is</u>
Defendant Rivalries, LLC's Motion to Dismiss is GRANTED.
Plaintiffs' Count II is DISMISSED.

The clerk is directed to enter this order on the docket by reference. M.R. Civ. P. 79(a).

---

[2] The parties did not brief or offer authority on whether the court should consider prejudice to the Defendant as a result of the delay when considering good cause.

Date: 5/5/23                    Signed: _____

Thomas R. McKeon
Justice, Maine Superior Court

5